## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| **AESTHETIC MANAGEMENT PARTNERS, INC.**, a Tennessee Corporation, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. _____ |
| **TRINA BARR**, ) ) | |
| Defendant. ) | |

## COMPLAINT

Aesthetic Management Partners, Inc. (hereafter "AMP"), by and through its undersigned counsel, hereby files this Complaint against Defendant Trina Barr ("Barr").

## INTRODUCTION

1. This proceeding is an action for a declaratory judgment that the terms of an Employment Agreement (attached as **Exhibit A**) executed by Barr require Barr to litigate certain legal claims against AMP in binding arbitration in Memphis, Tennessee, including but not limited to those for unpaid wages pursuant to the Colorado Wage Claim Act, Colo. Rev. Stat. Ann. § 8-4-101, *et seq*. (the "Wage Claim Act").

## THE PARTIES

2. Plaintiff AMP is a Tennessee corporation with its principal place of business at 2492 Walnut Avenue, Suite 120, Tustin, CA 92780. AMP is a citizen of Tennessee and California.

3.      Defendant Barr is an individual domiciled in the State of Colorado at the following residence: 6991 Jay Road, Boulder, CO 80301. Thus, Barr is a citizen of the State of Colorado.

## JURISDICTION AND VENUE

4.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interests and costs, and this case is between citizens of different states.

a.      With regard to the amount in controversy, former legal counsel for Barr sent a demand letter to AMP in 2019, asserting that $321,525.52 was due to Barr pursuant to the Colorado Wage Claim Act, C.R.S. § 8-4-109(d)(1). (*See* Barr Demand Letter, attached as **Exhibit B**, at page 2.)

b.      In the subsequent Complaint Barr filed against AMP asserting a cause of action pursuant to the Colorado Wage Claim Act (in District Court, Boulder County, Colorado), Barr alleges that "AMP still owes Ms. Barr approximately $160,494.00," in reimbursement costs, in addition to commissions and profit-sharing. (Barr Verified Complaint and Jury Demand, attached as **Exhibit C**, at ¶ 42; *see also id*. at ¶¶ 26-39 (alleging that commissions and profit sharing are due to Barr).)

5.      This Court has personal jurisdiction over Barr because Barr's Employment Agreement with AMP waives personal jurisdiction in the United Stated District Court for the Western District of Tennessee. The Employment Agreement states as follows:

> 13.     Miscellaneous. . . . . The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the State of Tennessee without regard to its conflict of law principles. The Parties agree that courts of competent jurisdiction in Shelby County, Tennessee and the United States District Court for the Western District of Tennessee shall have concurrent jurisdiction with the arbitration tribunals of the American Arbitration Association

2

> for purposes of entering temporary, preliminary and permanent injunctive relief with regard to any action arising out of any breach or alleged breach of this Agreement. ***The Parties agree to submit to the personal jurisdiction of such courts and any other applicable court within the state of Tennessee.***

(Ex. A at 7-8 (emphasis supplied).)

6. The Employment Agreement signed by Barr also waives any *forum non conveniens* claim, waives any objection to venue in Memphis, Tennessee, as follows:

> 14. <u>Arbitration.</u>  ***The Parties waive any claim that they may have that any of the foregoing courts is an inconvenient forum. . . . Venue for any arbitration between the Parties shall be had and is mandatory in Memphis, Tennessee to the exclusion of all other places of venue, for all matters that arise under this Agreement.***

(Ex. A. at 8 (emphasis supplied).)

7. Consent to a forum selection clause or venue clause constitutes a consent to personal jurisdiction under the applicable law.

8. Further, this Court has specific jurisdiction over Barr because she has purposely availed herself of Tennessee through minimum contacts with Tennessee, and it is reasonable and foreseeable for Barr to defend suit in Memphis, Tennessee. This is evidenced by Barr's employment contract and business transactions with AMP within the State of Tennessee. Further, Barr traveled to Memphis, Tennessee as part of her employment with AMP which is a Tennessee corporation. Further, Barr is currently involved in an arbitration with counterclaims against AMP before the American Arbitration Association in which the hearing locale is Memphis, Tennessee (AAA Case No. 01-19-0003-2124).

9. Barr is subject to the Tennessee long-arm statute at Tenn. Stat. § 20-2-214(a) because the cause(s) of action stated herein arise from Barr's employment contract and business transactions with AMP within the State of Tennessee. Further, Barr traveled to Memphis, Tennessee as part of her employment with AMP, which is a Tennessee corporation. Further, Barr

is currently involved in an arbitration against AMP before the American Arbitration Association in which the hearing locale is Memphis, Tennessee (AAA Case No. 01-19-0003-2124).

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District, and because Barr expressly consented to the venue of Memphis, Tennessee in the Employment Agreement she executed with AMP. (*See* Ex. A. at 8 (Section 14 of the Employment Agreement).)

## FACTUAL ALLEGATIONS

11. AMP is a business accelerator for leading aesthetics manufacturers. It provides a comprehensive ecosystem of business support including sales, engineering, network of physicians, branding, marketing, clinical and customer service to enhance the reach and growth of companies in the aesthetics industry. Physicians gain access to carefully curated product lines that will help their practice continue to provide innovative procedures and great results for their patients. Manufacturers gain access to a management team with a proven track record of success, nationwide distribution, branding, marketing, sales and clinical support.

12. Trina Barr has a sales and clinical background in the aesthetics industry.

13. On or about September 17, 2018, AMP and Barr entered into an Employment Agreement for her to serve as the Company's Vice President of Product Development and Clinical Integration[1] (Ex. A). The Employment Agreement contained three provisions critical to this dispute: a non-solicitation provision, a non-disparagement provision, and an arbitration provision.

---

[1] Her title was later changed to Vice President of Clinical Operations by mutual agreement of the parties.

4

14. The non-solicitation provision reads as follows:

> (c) <u>Non-solicitation</u>.  During the Employment Period, and for 12 months after the Employee's Date of Termination if the Employee's employment is terminated by the Company for Cause . . . the Employee will not, directly or indirectly . . . (3) solicit any customer or other person with a business relationship with the Company or any of its affiliated companies to terminate, curtail or otherwise limit such business relationship.

Employment Agreement, *id.* at paragraph 8(c).

15. The non-disparagement provision reads as follows:

> (d) <u>Non-disparagement</u>.  During the Employment Period and for two (2) years thereafter, (i) neither the Employee, nor anyone acting on behalf of the Employee, shall make or publish any disparaging or derogatory statement (whether written or oral) regarding the Company or any of its affiliated companies or businesses that are known to the Employee to be so affiliated . . . .

*Id.* at paragraph 8(d).

16. The arbitration provision reads as follows:

> 14. <u>Arbitration</u>. . . . . The Parties agree that all controversies, claims, disputes and matters in question arising out of, or related to this Agreement, the performance under this Agreement, the breach of this Agreement or any other matter or claim whatsoever shall be decided by binding arbitration before the American Arbitration Association, utilizing its Commercial Rules. Venue for any arbitration between the Parties shall be had and is mandatory in Memphis, Tennessee to the exclusion of all other places of venue, for all matters that arise under this Agreement.

*Id*. at paragraph 14.

17. Unfortunately, working productively with Barr proved impossible. During her short period of employment, Barr engaged in multiple episodes of misconduct that were plainly adverse to AMP's interests, reputation, and business.

18. Accordingly, AMP terminated Barr for cause on April 18, 2019. *See* Notice of Termination and General Release (attached as **Exhibit D**).

19. As the Notice of Termination explains, AMP proposed a General Release ("Release") at the time of Barr's termination.

20. In presenting the Release, AMP representatives expressly advised Barr that she did not have to sign the agreement at that time, that she could take the agreement back to her attorney to review, and that she could wait to sign it until after she consulted with a lawyer.

21. Barr declined AMP's offer to take time to consult with her lawyer. Barr said words to the effect that she did not care about the options (i.e., her equity compensation) and was fine parting with the company. She then signed the release, the parties stood, and Barr gave Mr. Erik Dowell a hug (AMP's CEO and founder), saying it was all going to work out well.

**A.     BARR'S IMPROPER DEMAND FOR WAGES AND OTHER COMPENSATION**

22. By signing the Release, Barr agreed to "irrevocably and unconditionally release, waive, and forever discharge [AMP] . . . from any and all claims or causes of action that [Barr] had, have, or may have (i) relating to [Barr's] employment with or engagement by [AMP] . . . and/or termination therefrom up to and including the date of [the] [] Release, including but not limited to any claims under Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act, and any other obligation and liability, including claims and causes of action arising under any federal, state or local statute, ordinance or regulation governing employment, employment discrimination, and leaves of absence; as well as all claims and causes of action arising under common law; state tort law; and the law of wrongful or retaliatory discharge in violation of public policy." (**Ex. D.**)

23.     Almost immediately after Barr executed the Release, she began a series of emails to AMP seeking reimbursement of expenses other than those approved and paid by AMP in connection with the termination of her employment.

24.     First, on April 22, 2019, Barr sent an e-mail to AMP's General Counsel, Mr. Mark Crosby, attaching a PowerPoint presentation claiming that she was owed a total of $125,839.39 in "labor" and "other costs."

25.     In May and June 2019, Barr sent additional emails attaching images of receipts and Excel spreadsheets for additional, unapproved costs and expenses.

26.     By e-mail dated June 13, 2019, Crosby replied to Barr's submissions, including the PowerPoint for $125,839.39, confirming additional reimbursements would be made to Barr by AMP for some of the expenses submitted by Barr after her termination. The email also rejected the PowerPoint claims on the basis of the Release and the Equipment AMP allowed Barr to retain as consideration for the Release.

27.     Barr responded by e-mail on June 14, 2019, stating "I am not seeking the full $125k. I simply want the employee hourly rate, Carol's hours[2] . . . and my expenses for supplies I submitted," adding that "Carol will send a final bill, today."

28.     By June 15, 2019 email, Carol Matta submitted a purported time sheet claiming additional labor and expenses owed.

29.     By June 20, 2019 email, Crosby replied to Barr's email stating:

> I have collected and reviewed with AMP all your requests for expense reimbursement at this point.  This includes reviewing Carol's submissions for time ($7,750) and expenses ($3,549.13, of which $2,635 was for gasoline)….[N]ot considering Carol's claimed expenses, the issue came down to roughly $10,000 in expenses we needed clarified….AMP has now reconciled

---

[2] Carol Matta is Trina Barr's mother, who was at no time employed by AMP.

these remaining pending expense reimbursement requests and approves $4,293.40 out of $7,628.17 claimed, as laid out in the attached reconciliation."

30. Regarding Carol Matta's claim for hours, Crosby stated:

AMP paid you base compensation of $80,000/year and in January began paying you an additional $5,000/month, together with a catchup payment in lump sum of $35,000, to offset ELC-related expenses for AMP work. Given this, and given that Carol was under your employ at ELC, and given that AMP is repeatedly on record stating that Carol would not be and indeed was never engaged or employed by AMP, Carol's claimed expenses and claimed compensation are denied.

31. Crosby concluded his email to Barr by offering to reimburse her the approved expenses of $4,293.50, "provided you confirm…it is a final payment . . . for the whole of your, ELC's and Carol's claimed expenses and compensation."

32. By July 1, 2019 email, Barr replied to Crosby's June 20, 2019 email stating:

The $4000 amount in no way comes close to the money owed for my time and contributions to AMP, nor does it cover the amount you owe Carol for her agreed upon expenses of $3k. Each day I supported was a fixed hard cost to me of at least $2k, and AMP has recovered excessive amounts of revenue from my efforts and I am left footing the bill which more than swallowed my $80k salary and $5k stipend. The letter of release was signed under extreme duress. I have constant and consistent examples of continuous disparagement from Erik, beginning the evening of the Barr/Helwig event.

33. Barr later states in her email, "[w]hat I am respectfully requesting is the money owed…Carol…and my staff costs and expenses that superceded the $5k/mo stipend where I am out straight cash to support AMP sales." AMP did not reply to that email.

34. Thereafter, Barr sent AMP a Demand Letter requesting that AMP pay her $321,525.52 pursuant to the Colorado Wage Claim Act (**Ex. B**).

35. Notably, Barr's Demand Letter contains two dates: the date of June 12, 2019 (listed on page one of the letter) and the date of July 22, 2019 (listed on the top left corner of the second and third pages of the letter).

36. AMP did not receive Barr's Demand Letter until August 12, 2019, when her then-lawyer, Mr. Dean Herms, forwarded a copy of the letter by e-mail to AMP's General Counsel, Mark Crosby, *without* the referenced attachments. Mr. Herms described his email as "making demand for unpaid wages/compensation to Ms. Trina Barr."

37. The original Barr Demand Letter, again without attachments, was received by AMP on August 19, 2019, by U.S. Mail sent to AMP's office address in Tustin, California. The attachments referenced in the body of the letter were not included.

38. AMP contends that Barr has been paid all wages and compensation to which she is entitled under the Employment Agreement, up to and including her date of termination.

39. None of the services, expenses, or costs identified in Barr's Demand Letter are reimbursable or compensable under the controlling Employment Agreement between AMP and Barr. Even if they were, under the plain language of the Release, Barr released AMP from any obligation to pay such amounts, because Barr released and/or waived all claims "relating to [Barr's] employment with or engagement by [AMP] . . . and/or termination therefrom up to and including the date of [the] [] Release" (**Ex. D**.)

40. Further, none of the services, expenses, or costs identified in Barr's Demand Letter are recoverable as wages or compensation, as a matter of law, under the Colorado Wage Claim Act.

**B.    PENDING LITIGATION BETWEEN THE PARTIES**

41. Due to Barr's Demand Letter and related correspondence from lawyers retained on her behalf, on October 9, 2019, AMP initiated arbitration against Trina Barr before the American Arbitration Association ("AAA").

42. On November 13, 2019, AMP filed a Verified Amended Demand for Arbitration against Trina Barr before the AAA asserting claims for (1) replevin (the return of certain valuable medical equipment), and (2) declaratory judgment that the terms of the Release executed by Barr preclude Barr from asserting legal claims against AMP, including those for allegedly unpaid wages and compensation pursuant to the Colorado Wage Claim Act, Colo. Rev. Stat. Ann. § 8-4-101, *et seq*.

43. The arbitration hearing locale asserted in AMP's original Verified Demand for Arbitration and Verified Amended Demand for Arbitration was Memphis, Tennessee, as specified in the Employment Contract (Ex. A) and an e-mail from Barr's legal counsel dated 10/1/2019 (attached as **Exhibit E**).

44. After multiple extensions of time, on December 16, 2019, Barr answered AMP's Verified Amended Demand for Arbitration and asserted a counterclaim against AMP in the arbitration pending in Memphis, Tennessee.

45. Barr's Answer and Counterclaim asserts that the arbitration hearing locale is "Memphis, Tennessee." (Barr's Answer to Verified Amended Demand for Arbitration and Counterclaim of Respondent, attached as **Exhibit F**, at 21.)

46. On December 10, 2019, Barr filed a state court action in Colorado asserting a cause of action against AMP under the Colorado Wage Claim Act. (*See* Complaint and Jury Demand, attached as **Exhibit G** (referred to herein as "Colorado Case No. 19CV31194").)

47. On December 12, 2019, Barr filed a Notice of Dismissal Without Prejudice that dismissed Colorado Case No. 19CV31194.

48. On December 18, 2019, Barr filed a second state court action in Colorado asserting a cause of action against AMP under the Colorado Wage Claim Act. (*See* Verified Complaint and Jury Demand, **Ex. C**.)

### CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT ACTION AGAINST BARR)

49. AMP incorporates by reference the preceding allegations of this Complaint as if set forth fully herein.

50. This controversy is appropriate for resolution under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

51. In the Barr Demand Letter, Barr alleges that AMP owes her at least $321,525.52 in unpaid wages under the Wage Claim Act. (*See* Ex. B**.**)

52. Further, in a complaint filed in Colorado state court, Barr has alleged that "AMP still owes [her] approximately $160,494.00," in reimbursement costs, in addition to commissions and profit-sharing. (Barr Verified Complaint and Jury Demand, attached as **Exhibit C**, at ¶ 42; *see also id*. at ¶¶ 26-39 (alleging that commissions and profit sharing are due to Barr).)

53. An actual controversy exists as to whether Barr must resolve her claim(s) under the Colorado Wage Claim Act in binding arbitration in Memphis, Tennessee pursuant to the Employment Agreement (Ex. A), the Federal Arbitration Act, and other applicable law.

54. Specifically, Barr's attempt to litigate her Colorado Wage Act Claim in state court violates the arbitration provision in the Employment Agreement with AMP (Ex. A). AMP's business and Barr's contractual duties under the Employment Agreement involve commerce (including interstate commerce) and the contract at issue is one for employment. As such, the Federal Arbitration Act governs the arbitrability of Barr's claims under the Colorado Wage

Claim Act. Barr's state court complaint asserting a Colorado Wage Act Claim against AMP outside of arbitration is preempted by the Federal Arbitration Act.

55. A declaratory judgment on the foregoing matters will completely resolve the existing controversy between the parties.

56. Failure of this Court to retain jurisdiction on this declaratory judgment action, however, will result in piecemeal litigation.

57. AMP is entitled to a declaratory judgment on these matters.

## **PRAYER FOR RELIEF**

WHEREFORE, AMP requests the following relief against Barr:

58. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, a declaratory judgment that Barr must resolve her claim(s) against AMP, including but not limited to those under the Colorado Wage Claim Act, in binding arbitration in Memphis, Tennessee pursuant to the Employment Agreement (Ex. A), the Federal Arbitration Act, and other applicable law; and

59. Such other and further relief as the Court deems just and proper.

Date: January 10, 2020	Respectfully submitted,

        s/ Gary S. Peeples
        Gary S. Peeples (BPR No. 32303)
        **BURCH, PORTER & JOHNSON, PLLC**
        130 North Court Avenue
        Memphis, TN  38103
        Telephone:  901.524.5127
        Facsimile:  901.524.5024
        Email:  gpeeples@bpjlaw.com

        – and –

        Michele On-ja Choe
        (*Pro hac vice application forthcoming*)
        **WHEELER TRIGG O'DONNELL LLP**
        370 17th Street, Suite 4500
        Denver, CO 80202
        Telephone:  303.244.1926
        Facsimile:  303.244.1879
        Email:  choe@wtotrial.com

        *Attorneys for Plaintiff Aesthetic Management Partners, Inc.*