Aesthetic Management Partners, Inc. v. Trina Barr
Complaint

# Exhibit C

Verified Complaint and Jury Demand
filed December 18, 2019

| | |
|---|---|
| DISTRICT COURT, BOULDER COUNTY, COLORADO<br>Court Address:<br>Boulder County Justice Center<br>1777 Sixth Street<br>Boulder, Colorado 80306 | DATE FILED: December 18, 2019 12:38 PM<br>FILING ID: 626107BED8657<br>CASE NUMBER: 2019CV31216 |
| **TRINA BARR,**<br><br>**Plaintiff**<br><br>vs.<br><br>**AESTHETIC MANAGEMENT PARTNERS, INC.** a Tennessee Corporation.<br><br>**Defendant** | ▢ **COURT USE ONLY** ▢<br><br>_____<br>Case Number:<br><br>Div.:        Ctrm.: |
| Attorneys for Plaintiff<br><br>Name: Elkus & Sisson, P.C<br>       7100 E. Belleview Suite 101<br>       Greenwood Village, Colorado 80111<br><br>Phone No.:    303-567-7981<br><br>Atty. Reg. #:   Reid J. Elkus, #32516<br>                Kathryn Sheely, #52182 | |
| **VERIFIED COMPLAINT AND JURY DEMAND** ||

COMES NOW, the Plaintiff, Trina Barr, by and through her undersigned counsel, Elkus & Sisson, P.C., and hereby files this Complaint and Jury Demand.

1

## **PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Trina Barr (or Ms. Barr) is an individual that resides at 6991 Jay Rd, Boulder, CO 80301.

2. Defendant Aesthetic Management Partners, Inc., ("AMP") is a Tennessee Corporation that is doing business in the State of Colorado. The principal office of the Defendant is located at 40 Bainbridge CV., Arlington, TN 38002.

3. At all times relevant, Ms. Barr executed the September 17, 2018, AMP Employment Agreement in Boulder County, State of Colorado.

4. At all times relevant, Ms. Barr ran Experiential Learning Center ("ELC") in Boulder, County, State of Colorado.

5. At all times relevant, ELC was the entity from which Ms. Barr provided training for AMP'S products.

6. At all times relevant, ELC's office was located in Boulder County, State of Colorado.

7. At all times relevant, AMP paid Ms. Barr the monthly rent for ELC's office in Boulder County, State of Colorado.

8. At all times relevant, AMP paid for physicians and/or AMP representatives to travel to the State of Colorado to receive training from Ms. Barr.

9. At all times relevant, the physicians and/or AMP representatives that traveled to the State of Colorado to receive training from Ms. Barr, as set forth in paragraph 8 herein, went to ELC's office in Boulder County, State of Colorado.

10. At all times relevant, approximately one (1) to two (2) times a month, AMP President, Adrian Bishop, conducted AMP sales meeting at ELC's office in Boulder County, State of Colorado.

11. At all times relevant, the AMP equipment that Ms. Barr used to train physicians and/or AMP representatives was located at ELC's office in Boulder County, State of Colorado.

12. On or about April 18, 2019, AMP executives (Erik Dowell and Mark Crosby – who is AMP's General Counsel) traveled to the State of Colorado and terminated Ms. Barr's employment with AMP.

13. On or about April 18, 2019, Mr. Dowell and Mr. Crosby provided to Ms. Barr a General Release which was a document that was created by AMP to have Ms. Barr waive any and all claims she may have against AMP (the "Release").

14. On or about April 18, 2019, the Release was hand delivered to Ms. Barr by Mr. Dowell and/or Mr. Crosby in the State of Colorado.

15. The Release was signed by Ms. Barr in the State of Colorado.

16. The Release is void as a matter of Colorado law as it pertains to Ms. Barr's claim under the Wage Claim Act – C.R.S. §8-4-109.

17. At all times relevant, that contract and ensuing conduct giving rise to this action occurred in Boulder County, State of Colorado. As such, venue is proper pursuant to C.R.C.P. Rule 98(c).

## GENERAL ALLEGATIONS

18. AMP advertises that it is a business accelerator for leading aesthetics manufacturers. According to AMP, it provides a comprehensive ecosystem of business support including sales, engineering, network of physicians, branding, marketing, clinical and customer service to enhance the reach and growth of companies in the aesthetics industry.

19. Ms. Barr holds a Bachelor of Science degree from Texas A&M University.

20. Ms. Barr has worked in the field of medical aesthetics since 2012.

21. Based on her vast experience in the medical field of aesthetics and recognizing her abilities in this specialized area of medicine, AMP entered into an employment agreement with Ms. Barr.

22. AMP and Ms. Barr entered into an Employment Agreement on June 21, 2018.

23. Under the initial Employment Agreement, AMP agreed to employ Ms. Barr as Vice President of Product Development and Clinical Integration.

24. In her position as Vice President, Ms. Barr agreed to use her relationships,

experience, knowledge of the field and overall business acumen to identify and source new technologies (including protocols and combinations of such technologies) for AMP.

25.     In addition to identifying new technologies, Ms. Barr further agreed to work directly with AMP's OEM manufacturers and/or supplies to identify, develop or design future products for AMP.

26.     As set forth in the Employment Agreement, AMP agreed to pay Ms. Barr a salary as well as commission.

27.     Regarding the commission structure, AMP agreed to pay Ms. Barr a commission after an end-user customer issues a valid purchase order and the product is then invoiced to AMP. Commissions earned "shall be paid by AMP" to Ms. Barr monthly.

28.     The commissions are to be paid to Ms. Barr by the last business day of the calendar month following the month within which the purchase order was received.

29.     In calendar year 2018, Ms. Barr was receiving commissions of approximately 50% of AMP product that was sold through Experiential Learning Center ("ELC").

30.     Upon information and belief, despite selling AMP product as required under the Employment Agreement, Ms. Barr was not receiving her full commission for the 2018 calendar year.

31.      Likewise, upon information and belief, despite selling AMP product as required under the Employment Agreement, Ms. Barr was also not receiving her full commission for the 2019 calendar year.

32.     In addition to commissions, Ms. Barr was also entitled to profit sharing.

33.     The June 21, 2018, Employment Agreement set forth the basis and criteria for Ms. Barr to receive equity in the form of shares of common stock of AMP.

34.     Initially, Ms. Barr would receive up to 2,000,000 shares of common stock with 500,000 shares vesting on January 1, 2019.  The remaining shares would vest on January 1st each year (2020, 2021 and 2022) for a total of 2,000,000 shares.

35.     In August, 2018, the Parties renegotiated Ms. Barr's equity in AMP.

36.     Upon information and belief, the Parties agreed that on or before October 1, 2018, 1,000,000 shares of common stock in AMP shall vest to Ms. Barr with an option price of .025

per share.

37. On or about September 17, 2018, the Parties executed a revised Employment Agreement ("Revised Agreement"). The Revised Agreement was to set forth the understanding and agreement of the revised equity Ms. Barr was to earn throughout her tenure with AMP.

38. The equity plan in the Revised Agreement incorrectly set forth the vesting amount that Ms. Barr and AMP agreed upon in August 2018. Evidencing the scrivener's error is that the Revised Agreement had Ms. Barr receiving less shares than previously agreed upon in the June 21, 2018, Employment Agreement.

39. Despite the scrivener's error in the Revised Agreement, on or about August 3, 2018, AMP advised Ms. Barr that 1,000,000 shares of common stock in AMP shall vest to Ms. Barr on or before October 1, 2018.

40. In addition to commissions and profit sharing, AMP also agreed to reimburse Ms. Barr's expenses that were customary and reasonably incurred in connection with the performance of her duties at the company.

41. From October 2018 to April 2019, AMP was being invoiced for Ms. Barr's expenses via the ELC Advances Clinical Integration Training and ELC Technologies Immersion. The total expenses incurred on behalf of AMP, which expenses were paid by Ms. Barr, totals $216,551.00.

42. Out of the $216,551.00, AMP reimbursed Ms. Barr approximately $56,057.00. AMP still owes Ms. Barr approximately $160,494.00.

43. On April 18, 2019, AMP terminated Ms. Barr's employment.

44. At the time of Ms. Barr's termination, she was entitled to receive her earned commissions, her unpaid expenses, and her vested shares of common stock.

45. As of the date of this complaint, AMP has not paid Ms. Barr her earned commissions, her unpaid expenses, and vested shares of common stock

46. On or about August 19, 2019, and on behalf of Ms. Barr, Mr. Dean Herms of Herms & Herrera, LLC, sent to AMP a demand for wages and compensation under C.R.S. §8-4-109.

47. Despite Mr. Herms demand, and as of the date of this Complaint, AMP has not paid Ms. Barr her full wages and compensation which were earned, vested, and determinable at the time of her discharge.

# CLAIM FOR RELIEF
(*Wages Claim Act* – C.R.S. §8-4-109)

48.  Plaintiff incorporates by reference all other paragraphs contained in this Complaint and Jury Demand.

49.  At the time of the termination of her employment, Ms. Barr was entitled to receive earned commissions as well as being paid her expenses and vested profit sharing.

50.  Pursuant to C.R.S. § 8-4-109, when an interruption in the employer-employee relationship by volition of the employer occurs, the wages or compensation for labor or services earned, vested, determinable, and unpaid at the time of such discharge is due and payable immediately.

51.  The commissions, expenses and profit sharing were compensation due to Ms. Barr that was earned, vested, and determinable at the time of her termination.

52.  On or about August 19, 2019, and on behalf of Ms. Barr, Mr. Dean Herms of Herms & Herrera, LLC sent to AMP a demand for wages and compensation under C.R.S. §8-4-109.

53.  To date, AMP has refused to provide payment of the above monies which were earned, vested, and determinable. As such, AMP is subject to the penalties outlined in C.R.S. § 8-4-109.

WHEREFORE, the Plaintiff prays for Judgment as follows:

A.  Payment of monies earned, vested, and determinable; penalties and damages allowable on the amount pursuant to C.R.S. §8-4-109; and reasonable attorney's fees and costs;

B.  Such other and further relief as the court deems proper in the circumstances including but not limited to attorneys' fees and costs.

**THE PLAINTIFF HEREBY DEMANDS A JURY FOR THOSE CLAIMS WHICH ARE TRIABLE.**

Respectfully submitted this 13th day of December, 2019.

                                          **ELKUS & SISSON, P.C.**

                                          */s/ Reid J. Elkus*
                                          Reid J. Elkus, 32516
                                          Lucas Lorenz
                                          Kathryn Sheely, 52182
                                          Attorneys for Plaintiff
                                          ELKUS & SISSON, P.C.
                                          7100 E. Belleview Suite #101
                                          Greenwood Village, Colorado 80111
                                          (303) 567-7981 (phone)
                                          (303) 431-3753 (fax)

## VERIFICATION

      I, Trina Barr, declare that the factual statements in this Complaint concerning myself, my activities and my intentions are true and correct, as are the factual statements concerning Aesthetic Management Partners, Inc.

      Executed on December 13, 2019.

                                          *Trina Barr*
                                          Trina Barr